1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  AGRO DYNAMICS, LLC a Wyoming Limited Liability Company, | Case No.:  20-cv-2082-JAH-KSC |
| 12 | |
| 13                                Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART COUNTY** |
| 14  v. | **DEFENDANTS' MOTION TO DISMISS (Doc. No. 9), AND** |
| 15  UNITED STATES OF AMERICA, DRUG ENFORCEMENT | **GRANTING IN PART AND DENYING IN PART FEDERAL** |
| 16  ADMINSTRATION, SAN DIEGO COUNTY, et. al., | **DEFENDANTS' MOTION TO DISMISS (Doc. No. 11)** |
| 17 | |
| 18                                Defendants. | |

19

20                          **INTRODUCTION**

21          Plaintiff Agro Dynamics, LLC brings a seven-count action alleging local and federal

22   law enforcement officers executed a search warrant on its premises and seized and

23   destroyed all of Plaintiff's hemp plants for which Plaintiff had a registration permit from

24   the County of San Diego to cultivate.  County Defendants consist of the County of San

25   Diego (the "County") and Steve Bodine, Justin Moore, Dwayne Prickett, Christopher

26   Perez, and Ricardo Andrade's ("County Officers").  Federal Defendants consist of the

27   United States, the Drug Enforcement Administration ("DEA"), and Paul Gelles, Eric Ball,

28   Kieran Garcia, Marsha Dawe, Ross Van Nostrand, Jeremy Fuez, Frank Haskell, Andrew

Aguilar, Jason Stein, Timothy Smith, Michael Astorga, and Christopher Morris ("Federal Officers").  Plaintiff also sues Does 1 through 50 whose identities are currently unknown.

County and Federal Defendants each filed a motion to dismiss the Amended Complaint.  *See* Doc. Nos. 9, 11.  Having carefully considered the parties' submissions, and for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** County Defendants' motion to dismiss and **GRANTS IN PART AND DENIES IN PART** Federal Defendants' motion to dismiss.

## BACKGROUND

According to Plaintiff's complaint, under both United States and California law, "industrial hemp" or "hemp" is the plant Cannabis sativa L. and any part of that plant with a delta-9 tetrahydrocannabinol concentration of *no more* than 0.3 percent on a dry weight basis.  Amended Complaint ("AC") ¶¶ 30–31, Doc. No. 8 (emphasis added).  Hemp shares the same appearance, shape, color, odor, and leaf structure as marijuana and both hemp and marijuana are grown outdoors and in greenhouses.  *Id.* ¶ 34.  Like hemp, marijuana is also the plant Cannabis sativa L.  *Id.*  The key difference between hemp and marijuana is in their chemical composition.   Under the United States Controlled Substance Act, marijuana is Cannabis sativa L. with a delta-9 tetrahydrocannabinol concentration of *more* than 0.3 percent on a dry weight basis.  *Id.* ¶ 33.  By the end of 2018, both the United States and the State of California had legalized the regulated production of hemp.  AC ¶¶ 28–29.

Plaintiff is a limited liability company registered to do business in California.  *Id.* ¶ 1.  In August 2019, Plaintiff received a registration permit from the County to cultivate and store outdoor hemp at its property located in the County and proceeded to grow hemp on its property.  *Id.* ¶¶ 35–37; *see* Ex. 3 to AC, Doc. No. 8-3.  On August 19, 2019, a laboratory analysis showed that these plants had less than 0.01 percent delta-9 tetrahydrocannabinol concentration.  *Id.* ¶ 38; *see* Ex. 4 to AC, Doc. No. 8-4.  In a month, Plaintiff had cultivated approximately 3,000 hemp plants at its property, but they had yet to flower and reach maturity.  *Id.* ¶ 39.

On September 12, 2019, County and Federal Officers executed a search warrant at Plaintiff's property. *Id.* ¶ 41. The search warrant was signed by a judge of the San Diego County Superior Court. Ex. A to Federal MTD, Doc. No. 11-1.[1] The warrant allowed law enforcement to search Plaintiff's property for marijuana and evidence of its cultivation and distribution. AC ¶ 52. The warrant was supported by an affidavit signed by Defendant Paul Gelles, a DEA special agent. According to his affidavit, Defendant Gelles saw large amounts of marijuana growing on Plaintiff's property during an aerial reconnaissance flight. *Id.* ¶ 43. The affidavit attached four aerial photos Defendant Gelles took showing plants growing inside greenhouses on Plaintiff's property. *See* Attachments A–D to Ex. A. The affidavit alleged probable cause for violation of California Health and Safety Code 11358, which outlines certain offenses and penalties for illegal cultivation of cannabis. AC ¶ 42.

While County and Federal Officers were executing the search warrant on Plaintiff's property, Plaintiff's on-site tenant advised the officers that the County had legally authorized Plaintiff's production of hemp. *Id.* ¶ 57. The tenant also offered to show County and Federal Officers the hemp registration permit that the County issued Plaintiff. *Id.* County and Federal Officers disregarded the tenant. *Id.* They made no effort to contact Plaintiff regarding the identity of the plants, nor did they test any of the plants that were growing on its property. *Id.* ¶¶ 58–59. County and Federal Officers seized and destroyed all of Plaintiff's hemp. *Id.* ¶ 63. The destroyed hemp had a value of more than $3 million. *Id.* ¶ 64.[2]

---

[1] The search warrant and Defendant Gelles's affidavit are incorporated by reference. The allegedly unlawful search warrant forms the basis of Plaintiff's claims, and Plaintiff cites extensively to the affidavit. *See In re Ocera Therapeutics, Inc. Sec. Litig.*, 2018 WL 7019481, at *5 (N.D. Cal. Oct. 16, 2018), *aff'd*, 806 F. App'x 603 (9th Cir. 2020).

[2] Both County and Federal Defendants attempt to introduce competing facts about the search and its justification. *See* Exs. A–B to County Reply, Doc. No. 15-1; Federal MTD at 3 n.4, 12 n.7. At the motion to dismiss stage, however, the Court assumes Plaintiff's well-pled facts to be true and declines to consider Defendants' facts outside the pleadings. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018).

Plaintiff originally filed suit in San Diego County Superior Court against County and Federal Defendants. *See* Ex. A to Notice of Removal, Doc. No. 1-2. The case was removed to this Court. Notice of Removal, Doc. No. 1. Plaintiff subsequently filed an Amended Complaint. County and Federal Defendants each filed a motion to dismiss. Doc. No. 9-1 ("County MTD"); Doc. No. 11 ("Federal MTD").[3] Plaintiff opposed both motions. Doc. No. 13 ("County Opp'n"); Doc. No. 14 ("Federal Opp'n"). County and Federal Defendants filed replies. Doc. No. 15 ("County Reply"); Doc. No. 16 ("Federal Reply").

**LEGAL STANDARD**

**I. Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he or she must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "the non-conclusory

---

[3] Federal Defendants' motion to dismiss does not dispute the First and Third Causes of Action against Defendant Gelles. Federal Reply at 10. They plan to dispute those causes of action against Defendant Gelles, along with the issue of Defendant Gelles's qualified immunity, at a motion for summary judgment. Federal MTD at 12 n.7.

'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## II. Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, defendants may seek to dismiss a complaint for lack of subject matter jurisdiction. "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008) (citation omitted). And it is the plaintiff's burden to establish subject matter jurisdiction. *United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

### DISCUSSION

The Amended Complaint alleges (1) violations of 42 U.S.C. § 1983 against all Defendants; (2) violations of Cal. Civ. Code § 52.1 (Bane Act) against all Defendants; (3)

violations of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution against all Defendants except the United States and DEA; (4) violations of Art. I, §§ 7, 13, and 19 of the California Constitution against all Defendants; (5) conversion against all Defendants; (6) trespass to chattels against all Defendants; and (7) negligence against all Defendants.  AC ¶¶ 74–151.

## I.   County Defendants' Motion to Dismiss

Plaintiff asserts all seven causes of action in the Amended Complaint against County Defendants.  In seeking dismissal of the Amended Complaint, County Defendants argue (A) there was no policy, custom, or practice behind the alleged constitutional violation pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) to support a claim under 42 U.S.C. § 1983; (B) County Officers are entitled to qualified immunity; (C) there is no direct cause of action for violation of the U.S. Constitution; (D) County Officers are immune from liability under California Government Code Section 821.6; (E) Plaintiff has not sufficiently alleged a claim under the Bane Act; and (F) Plaintiff's direct claims for violation of the California Constitution fail to allege a "taking" under the California Constitution, and no private right of action exists under other provisions of the California Constitution.

### A.   *Monell*, First Cause of Action

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or

decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690

But "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. To prevail against the County, Plaintiff must show that: (1) he possessed a constitutional right of which he was deprived; (2) the County had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) the policy is the moving force behind the constitutional violation. *See Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (citations omitted).[4]

Here, Plaintiff provides three theories of liability: longstanding practice or custom; ratification; and failure to train. First, Plaintiff alleges that the County "adhered to an unofficial custom or policy to show deliberate indifference towards the rights of hemp growers." AC ¶ 91. Besides describing the details of the incident in this case, Plaintiff has not alleged any fact concerning the County's treatment toward other hemp growers. "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996); *accord Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2711 (2022); *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021). Thus, Plaintiff's claim of a longstanding practice or custom cannot advance on this ground.

Second, Plaintiff alleges that the County "ratified the actions [County Officers] took to violate Plaintiff's rights." AC ¶ 91. "[T]o show ratification, a plaintiff must prove that the authorized policymakers approved a subordinate's decision and the basis for it" and had "knowledge of the alleged constitutional violation." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 885 (9th Cir. 2022) (quoting *Christie v. Iopa*, 176 F.3d 1231,

---

[4] Plaintiff's Section 1983 claims against County Officers in their official capacities is functionally equivalent to suing the County, so it is assessed under *Monell*. *See Brandon v. Holt*, 469 U.S. 464, 473 (1985).

1238-39 (9th Cir. 1999)).  Here, Plaintiff does not allege that any County policymaker "had knowledge (actual or constructive) of the offending" behavior "and then sanctioned its use." *Id.*  Thus, this ground fails.

Lastly, Plaintiff argues that the County is liable because it "failed to adequately train [County Officers] acting at their direction to distinguish between industrial hemp and cannabis."  AC ¶ 91.  The County argues that Plaintiff has failed to plead that the County was on actual or constructive notice of similar constitutional violations by untrained employees.  County Reply at 4-5.  The County cites *Connick v. Thompson*, 563 U.S. 51 (2011), for the proposition that notice is required.  In *Connick*, the Supreme Court found that "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id*. at 61 (brackets in original) (citation omitted).  However, *Connick* acknowledged "the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 *without proof of a pre-existing pattern of violations*." *Id.* at 64 (emphasis added); *see also Hyun Ju Park*, 952 F.3d at 1141-42; *Est. of Silva*, 2020 WL 6946011, at *13 (S.D. Cal. November 25, 2020).  *Connick* drew this principle from *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).  In *Canton*, the Court provided a patently obvious failure-to-train scenario: "city policymakers [who] know to a moral certainty that their police officers will be required to arrest fleeing felons" and yet fail to "train officers in the constitutional limitations on the use of deadly force." *Id.* at 390 n.10.

In the Ninth Circuit, a plaintiff can meet the standard of *Connick*

in one of two ways.  In some circumstances, the policy may be so facially deficient that any reasonable policymaker would recognize the need to take action.  When that is the case, a plaintiff need point only to the policy itself to establish that the municipality's policymakers were on notice that the plaintiff's federally protected rights would likely be violated if they failed to act.  Alternatively, if the policy is not obviously, facially deficient, a plaintiff must ordinarily point to a pattern of prior, similar violations of federally

protected rights, of which the relevant policymakers had actual or constructive notice.

*Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141-42 (9th Cir. 2020) (citations omitted); *accord Est. of Silva v. City of San Diego*, 2020 WL 6946011, at *13 (S.D. Cal. Nov. 25, 2020).

Here, Plaintiff sufficiently alleges facts showing that the County's failure to train law enforcement in distinguishing hemp from marijuana was "so facially deficient" that "plaintiff's federally protected rights would likely be violated if they failed to act." *Id.* The complaint alleges that the cultivation of hemp is legal under both state and federal law. AC ¶¶ 28–33. Hemp and marijuana "are both Cannabis sativa L., they share the same appearance, shape, color and odor, and have the same leaf structure." *Id.* ¶ 34. Moreover, "[t]hey are both grown outdoors and in greenhouses." *Id.* California passed a law in 2017 that permitted the cultivation of hemp. *Id.* ¶ 28. In August 2019, the County issued Plaintiff a registration permit to cultivate and store outdoor hemp at its property. *Id.* ¶ 36. The following month, the San Diego Superior Court issued a warrant to search the property for marijuana. *Id.* ¶ 47. The warrant did not authorize the seizure of hemp. *Id.* ¶ 53. When law enforcement executed the warrant on Plaintiff's property, its tenant advised the County and Federal Officers that the hemp plants were legally authorized under California law. *Id.* ¶ 57. The tenant offered to show them the proof of registration, but the officers ignored the offer. *Id.* The County and Federal Officers seized and destroyed the hemp on the property without contacting Plaintiff or performing any test. *Id.* ¶¶ 59–60.

Considering the allegations in the light most favorable to Plaintiff, Plaintiff sufficiently alleges facts to show that the County's failure to train its law enforcement officers on the difference between marijuana and hemp reflected a deliberate indifference to the rights of hemp owners—rights that the County itself previously recognized when it issued entities like Plaintiff a hemp registration permit. The allegations sufficiently allege that it should have been "obvious" to the County that law enforcement untrained on the distinctions between hemp and marijuana (or lacking a protocol to follow when confronted

with this situation) could mistakenly seize or destroy lawfully grown hemp, thereby causing substantial damages.  As such, Plaintiff sufficiently alleges facts to support its failure to train theory of liability pursuant to *Monell*.

### B. Qualified Immunity

Plaintiff also sued County Officers under Section 1983 in their individual capacities. County Officers argue that they are entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Longoria v. Pinal Cnty.*, 873 F.3d 699, 704 (9th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Id.* (citation omitted). Courts may exercise discretion in deciding which prong to address first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The absence of either element warrants a finding that immunity exists.  *See Shafer v. Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017).   A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).

"Plaintiffs bear the burden of proving that a constitutional right 'was clearly established at the time of the incident.'" *Benavidez*, 993 F.3d at 1151 (9th Cir. 2021) (citation omitted).  Still, at the pleading stage, the Court resolves the question of qualified immunity "drawing all inferences in [the plaintiff's] favor." *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022).   "If the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (citation omitted).

Here, Plaintiff has adequately alleged at least two ways in which County Officers violated clearly established Fourth Amendment law.  First, the search lacked probable cause.  "A warrant must be supported by probable cause—meaning a 'fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of circumstances.'"  *United States v. King*, 985 F.3d 702, 707 (9th Cir. 2021) (citation omitted).   Although a judge approved the search warrant, Defendant Gelles's affidavit contained materially misleading omissions.  It did not consider that hemp and marijuana are indistinguishable by appearance.  It did not account for the possibility that Plaintiff could be legally cultivating hemp.  It did not inform the issuing court that the County permitted cultivation of hemp and provided registration permits for this express purpose.  But for these materially misleading omissions, the warrant would likely not have issued.  *See Bravo v. City of Santa Maria*, 665 F.3d 1076, 1084 (9th Cir. 2011) (ruling that a search warrant for an alleged gang member's home in connection to drive-by shooting was invalid because affiant omitted the material fact that the gang member was in prison at the time of the shooting); *Drewry v, County of Riverside*, 2023 WL 2627740, at *7 (C.D. Cal.  January 23, 2023) ("This Court must ask whether probable cause remains once the affidavit is supplemented with the alleged omission—that Plaintiff was a registered hemp cultivator with the [county]").  The Court determines that the corrected affidavit could not establish probable cause because the alleged omission casts doubt on the existence of probable cause.

Although Defendant Gelles provided the affidavit to obtain the search warrant, the County Defendants may be liable if it was objectively unreasonable for them to rely on the warrant.  *See Motley v. Parks*, 432 F.3d 1072, 1082 (9th Cir. 2005) (en banc), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012); *accord Bravo v. City of Santa Maria*, 665 F.3d 1076, 1088 (9th Cir. 2011).  Generally, "a police officer is entitled to rely on information obtained from fellow law enforcement officers," but "this in no way negates a police officer's duty to reasonably inquire or investigate these reported

facts." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1293 n.16 (9th Cir. 1999) (citing cases).  As the Ninth Circuit has stated,

> The officers who lead the team that executes a warrant are responsible for ensuring that they have lawful authority for their actions.  A key aspect of this responsibility is making sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct.  The leaders of the expedition may not simply assume that the warrant authorizes the search and seizure.  Rather, they must actually read the warrant and satisfy themselves that they understand its scope and limitations, *and that it is not defective in some obvious way*.

*Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1027 (9th Cir. 2002) (emphasis added), *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551 (2004).[5]

Here, the warrant was defective in an obvious way.  Had the County Officers read the warrant and the attached affidavit that it incorporated, they would have discovered that Defendant Gelles entirely missed (and did not disclose to the issuing court) the possibility that Plaintiff was legally cultivating hemp on its property pursuant to the County's registration permit.  County Officers are law enforcement officers in the County.  The search occurred in their own backyard.  The warrant and affidavit fail to mention hemp at all—much less any effort to contact the County's Department of Agriculture, Weights and Measures, the entity that issued Plaintiff its hemp registration permits.  County Officers concede that marijuana and hemp are indistinguishable by appearance.  Taken together, these facts reveal that County Officers decided to execute a warrant that was extremely questionable and issued without probable cause.

The lack of probable cause to execute the warrant is further reinforced by Plaintiff's tenant's assertion to the officers during the search that Plaintiff was growing hemp, not

---

[5] "Line officers, on the other hand, are required to do much less." *Id.* at 1028.  Plaintiff has yet to identify which officers (and from which entities) led the search and which officers followed along.  Because the parties have not yet reached discovery, it is premature to conduct this analysis now.  *See Dahlin v. Frieborn*, 859 F. App'x 69, 71 (9th Cir. 2021) ("To prevail, the [plaintiff] will eventually need to demonstrate the defendants' precise roles in the alleged constitutional violation.").

marijuana.  Probable cause vanishes when law enforcement is "presented with convincing evidence that the information they had relied upon was incorrect."  *Motley*, 432 F.3d at 1082 (citation omitted).  Here, a reasonable officer may have disregarded the tenant's claim to innocent behavior—after all, that is not uncommon in their line of work.  But a reasonable officer would *not* have dismissed the tenant's offer to show physical proof of the County registration permit.  That document would plainly "undermine the information the officers previously had received" and alert them to the warrant's defects.  *Id.*  Under these circumstances, no reasonable officer would have moved forward with the search.  *See Butler v. Elle*, 281 F.3d 1014, 1027 (9th Cir. 2002) (Section 1983 case involving municipal employees allegedly involved in execution of warrant that lacked probable cause because another defendant obtained it through judicial deception).

The County Officers are not entitled to qualified immunity for a second and independent reason: "the law is clearly established that a search may not exceed the scope of the search warrant[.]"  *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004); *accord Dahlin v. Frieborn*, 859 F. App'x 69, 70 (9th Cir. 2021).  Here, the alleged facts show that County Officers exceeded the scope of the search warrant (limited to marijuana) when they seized and destroyed Plaintiff's hemp plants.  County Officers attempt to rely on the fact that hemp and marijuana are visually indistinguishable.  They argue that it was reasonable for them to mistake hemp for marijuana.  Not so.  Perhaps it would be reasonable to an average person to mistake hemp for marijuana.  But the qualified immunity standard looks to the reasonable behavior of *a law enforcement officer*.  Based on the alleged facts as recounted above, a reasonable officer would not have seized and destroyed Plaintiff's hemp plants.  Accordingly, Plaintiff's Section 1983 claims against the County Officers may proceed.

Plaintiff's federal due process and Takings Clause arguments as alleged, however, are meritless.  Plaintiff's due process claim essentially alleges unlawful process in the course of search and seizure, but this is "duplicative" of its Fourth Amendment claim.  *See Hill v. City of Sacramento*, 2023 WL 4374003, at *7 (E.D. Cal. July 6, 2023).  Plaintiff's

Takings Clause claim fails because the Takings Clause is applicable only when the taking is for public use and does not apply to seizures in the law enforcement context.  *See Scott v. Jackson Cnty.*, 297 F. App'x 623, 626 (9th Cir. 2008); *Hand v. Jones*, 2021 WL 4690589, at *9 (C.D. Cal. Feb. 12, 2021).  Plaintiff alleges the hemp plants were seized and destroyed and sets forth no allegations they were taken for any public purpose.

### C.  Third Cause of Action, Violations of the United States Constitution

Plaintiff asserts a claim for violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution (Third Cause of Action).  County Defendants argue no direct claim for violation of the United States Constitution exists.  "[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."  *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).  Therefore, the Court dismisses the Third Cause of Action against all County Defendants as duplicative of the First Cause of Action.

### D.  Immunity

County Defendants argue that California Government Code Section 821.6 shields from liability.  That provision provides in full, "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code § 821.6.  They argue that because "executing a search warrant is part of the investigative step in instituting and prosecuting judicial proceedings," they are immune from liability for any state-law claims.  County MTD at 6.  But the Ninth Circuit has interpreted the Supreme Court of California's caselaw to expressly limit Section 821.6's reach to malicious prosecution claims.  *See Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016).  Indeed, the Supreme Court of California has recently reaffirmed its prior caselaw on this precise issue.  *See Leon v. Cnty. of Riverside*, 530 P.3d 1093, 1101 (Cal. 2023) (rejecting argument that Section 821.6 covers investigatory actions taken prior to initiation of a judicial proceeding).  Where, as here, "the plaintiff's claim of injury does

not stem from the initiation or prosecution of proceedings, section 821.6 immunity does not apply." *Id.*

### E.  Second Cause of Action, Bane Act Claims

"The California Bane Act creates a cause of action against a person if that person 'interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States" or state law. *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018) (quoting Cal. Civ. Code § 52.1).[6]  "[P]roving a Bane Act claim," however, "requires specific intent to violate protected rights." *Id.* at 520.  The Ninth Circuit has elaborated on this analysis as follows:

> The specific intent inquiry for a Bane Act claim is focused on two questions: First, "[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case," and second, "[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?" So long as those two requirements are met, specific intent can be shown "even if the defendant did not in fact recognize the unlawfulness of his act" but instead acted in "reckless disregard" of the constitutional right.

*Id.* (citations omitted).  The first question is resolved if it is legally clear, under the circumstances of the case, that the defendants violated a clearly delineated right. *Id.*  With respect to the second question, "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018).

Plaintiff alleges Bane Act violations based upon violations of the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 7, 13, and 19 of the California Constitution

---

[6] California courts hold that there is no qualified immunity for violations of the Bane Act. *See Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040-41 (9th Cir. 2018) (citing *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1245 (2007)).

Plaintiff has adequately pled a Bane Act claim that County Officers violated its Fourth Amendment rights.  As to the first question in *Sandoval*, it is clearly established that County Officers violated this right for the reasons already discussed above in the section on qualified immunity.  As to the second question in *Sandoval*, construing all reasonable inferences in Plaintiff's favor, Plaintiff has adequately pled that County Officers acted with reckless disregard for its Fourth Amendment rights.  Based on the facts the Court highlighted above in its qualified immunity analysis, there are sufficient allegations showing the County Officers' conduct rose to the level of recklessness.  And because "California law permits *respondeat superior* liability for Bane Act violations," the County's motion to dismiss for failure to state a Bane Act claim against it is also denied. *Mendoza v. United States*, 2017 WL 4286907, at *7 (S.D. Cal. Sept. 27, 2017) (citation omitted).

Similar to the Fourth Amendment, Article I Section 13 guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."  Cal. Const. Art. I, § 13.  "[T]he right to be free from unreasonable searches under Art. I § 13 of the California Constitution parallels the Fourth Amendment inquiry[.]"  *Sanchez v. Los Angeles Dep't of Transportation*, 39 F.4th 548, 553 (9th Cir. 2022) (citation omitted).  Plaintiff has therefore adequately pled that County Defendants violated Art. I § 13 of the California Constitution and done so with the requisite intent required under the Bane Act.

The Article I, Section 7 claim (due process) is duplicative of the Article I Section 13 claim (search and seizure)—in the same way Plaintiff's Fifth Amendment claim is duplicative of its Fourth Amendment claim, described above—so the Court does not consider it.  The Article I, Section 19 claim (inverse condemnation) fails because property damage resulting from law enforcement is not a taking under Section 19, as discussed in Section I.F. below.  Thus, what remains is the Article I Section 13 claim (search and

seizure).  Although that provision, on its own, does not provide for monetary damages, nothing suggests that Plaintiff may not use it as the underlying predicate to its Bane Act claim.

### F.  Fourth Cause of Action, Violations of the California Constitution

County Defendants argue Plaintiff's causes of action for direct violations of the California Constitution fail because property damaged during the execution of a warrant is not a taking under Article I, Section 19 and there is no private right of action under Article I, Sections 7 and 13.

Plaintiff lacks a cause of action under Article I, Section 19 of the California Constitution because "[i]t is well established that inverse condemnation claims cannot apply to property damaged by law enforcement officers."  *Armstrong v. Sexson*, 2007 WL 2288297, at *6 (E.D. Cal. Aug. 8, 2007); *see Customer Co. v. City of Sacramento*, 10 Cal. 4th 368, 377-78 (1995) (*en banc*) ("[S]ection 19 . . . never has been applied to require a public entity to compensate a property owner for property damage resulting from the efforts of law enforcement officers to enforce the criminal laws.").

Article I, Section 13 of the California Constitution does not confer a private cause of action for damages.  See *Roy v. Cnty. of Los Angeles*, 114 F. Supp. 3d 1030, 1043 (C.D. Cal. 2015).  Plaintiff has failed to provide any Circuit or California appellate authority providing otherwise. *See Gonzalez v. Cnty. of Los Angeles*, 2023 WL 4247196, at *8 (C.D. Cal. Apr. 20, 2023) (declining to exercise supplemental jurisdiction over the plaintiff's action for money damages under Article 1, Section 13 of the California Constitution because "judicial recognition of a right to bring a cause of action under the California Constitution should first be made by California state courts").  Similarly, there is no right to sue under Article I, Section 7 of the California Constitution.  *See Bradley v. Med. Bd.*, 56 Cal. App. 4th 445, 462 (1997).  Plaintiff fails to address Defendants' contention as to Section 7 in its response, in any manner.  Accordingly, the Fourth Cause of Action is dismissed with prejudice.

//

## II.      Federal Defendants' Motion to Dismiss

Federal Defendants argue the complaint should be dismissed in its entirety because the Court lacks jurisdiction over Plaintiff's Constitutional claims against the United States, the DEA, and the individual DEA agents and Task Force Officers in their official capacities in the First and Third Causes of Action, the Bane Act claims in the Second Cause of Action, and the claims for violation of the California Constitution in the Fourth Cause of Action. Federal Defendants also argue the First and Third Causes of Action against the individual officers and agents in their individual capacities for violation of the Fifth Amendment Takings Clause are not based on a cognizable legal theory; The First and Third Causes of Action fail to state a claim against the individual agents and officers, and the United States is the only proper Federal Defendant for the state tort claims of Fifth, Sixth and Seventh Causes of Action and the claims are barred by the detention of goods exception.  Because sovereign immunity implicates this Court's subject matter jurisdiction, the Court will consider it first.  *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

### A. Subject Matter Jurisdiction

Federal Defendants argue the Court lacks subject matter jurisdiction over (1) the Constitutional claims against United States, the DEA and the individual agents and officers in their official capacity; (2) the Bane Act claims against all Federal Defendants; and (3) the California Constitutional claims against the United States, the DEA and individual officers and agents and their official capacities.  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Id*.  The Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity in civil actions for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]"  28 U.S.C. § 1346(b)(1).

### 1.  First and Third Causes of Action, U.S. Constitutional Claims

As relevant here, the FTCA waives the United States' sovereign immunity for certain torts committed by federal employees acting within the scope of their employment

to the same extent a private party would be liable.  *Id.*; *United States v. Orleans*, 425 U.S. 807, 813 (1976).  Because Plaintiff's federal constitutional claims allege state action, it follows that "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."  *Meyer*, 510 U.S. at 478.  Accordingly, the United States has not waived sovereign immunity here.[7]  And because a suit against federal officers in their official capacities is equivalent to a suit against the United States, those claims are, likewise, barred.  *See DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1127 (9th Cir. 2019); *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008).

Thus, the First and Third Causes of Action are dismissed as to the United States and DEA in their entirety, and they are dismissed as to Federal Officers in their official capacities.

### 2.  Second Cause of Action, Bane Act Claims

Federal Defendants argue the Bane Act claims against the United States, the DEA and the agents and officers in their official capacities are barred by sovereign immunity. They further argue the Federal Officers were acting within the scope of their employment and they cannot be sued directly for their allegedly tortious conduct.

Plaintiff cannot bring a Bane Act claim premised against the United States, the DEA and the federal officers in their official capacities on federal constitutional grounds.  *See Blanchard v. Cnty. of Los Angeles*, 2022 WL 17081308, at *2 (C.D. Cal. Aug. 25, 2022) ("A plaintiff cannot successfully bring a Bane Act claim under the FTCA premised on federal constitutional violations, and the Court therefore lacks subject matter jurisdiction over such claims." (citing *Lewis v. Mossbrooks*, 788 F. App'x 455, 460 (9th Cir. 2019)); *accord Mendoza v. United States*, 2017 WL 4286907, at *6 (S.D. Cal. Sept. 27, 2017).[8]

---

[7] DEA is not a proper defendant because suits under the FTCA must be directed at the United States.  *See infra* note 9.

[8] Federal Defendants argue, by footnote, that Plaintiff, a limited liability company, cannot avail itself of the Bane Act at all because that law only protects "individuals."  Federal MTD at 12 n.8.  Because this argument is underdeveloped, the Court does not consider it at this time.

Because Plaintiff's Bane Act claim "imports" state constitutional violations "that could not otherwise be the basis for a claim against a private person," the waiver of the United States' sovereign immunity in the FTCA does not "extend[]" to such action. *Lewis*, 788 F. App'x at 460; *Blanchard*, 2022 WL 17081308, at *3; *accord Drinan v. United States*, 2022 WL 18228399, at *7 (C.D. Cal. Dec. 14, 2022).

Additionally, creating a waiver of sovereign immunity against the United States for state constitutional claims disregards the purpose of the FTCA. As the Supreme Court has stated, because Congress created a limited waiver of sovereign immunity in the FTCA, "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Meyer*, 510 U.S. at 471. The Court agrees with Federal Defendants that it would be odd to prohibit federal constitutional torts against the United States but allow state constitutional tort claims to go forward. Federal Reply at 2-3. "Permitting a plaintiff to sue the United States for a violation of a state constitutional provision, rather than a federal constitutional provision, would create the *same result* the statute intended to prevent – holding the United States liable for a constitutional tort." *Blanchard*, 2022 WL 17081308, at *3 (emphasis added). If Congress wanted to carve out state constitutional claims, it could have said so. "[A] waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) (citation omitted). Because the FTCA does not endorse Plaintiff's reading of federal sovereign immunity, the Court declines to entertain Plaintiff's state constitutional claims against the United States, DEA, and Federal Officers in their official capacities.

Plaintiff, for its part, cites cases in this Circuit ruling that the United States is not immune from Bane Act claims arising under the California Constitution. *See Plascencia v. United States*, 2018 WL 6133713, at *13 (C.D. Cal. May 25, 2018); *Peralta v. United States*, 475 F. Supp. 3d 1086, 1098 (C.D. Cal. 2020). To be sure, these cases create a district court split with *Blanchard* and its progeny. But, neither of Plaintiff's cases examines the statutory text of the FTCA or explains why it would make sense for Congress to waive the United States' sovereign immunity in a situation where, supposing it were a

private litigant, it could not be subject to suit.  The Court therefore finds *Blanchard* persuasive and follows its reasoning.

Federal Officers argue that because they executed the warrant within their scope of employment, the FTCA provides the exclusive remedy for their alleged wrongdoing—a suit against the United States.  Plaintiff did not respond to this argument in its opposition.  The Court agrees with Federal Officers.  Plaintiff "ordinarily *cannot* bring state-law tort actions against employees of the Federal Government." *Minneci v. Pollard*, 565 U.S. 118, 126 (2012) (emphasis in original) (explaining that the Westfall Act, which amended the FTCA, "substitut[es] United States as defendant in tort action against federal employee[s]").  Where, as here, Plaintiff alleges "personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," the FTCA provides that a suit against the United States shall be "*exclusive* of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim[.]" 28 U.S.C. § 2679(b)(1) (emphasis added).[9] Thus, the Bane Act claim in the Second Cause of Action is dismissed as to Federal Defendants.

### 3.  Fourth Cause of Action, Violation of the California Constitution

Like their federal counterparts, the provisions of the California Constitution discussing search and seizure, takings, and due process prohibit only state action.  *See, e.g.*, *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 402 (2017).  As discussed above in

---

[9] The statute provides that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States[.]" 28 U.S.C. § 2679(d)(1).  Here, Federal Defendants have provided the certification.  Ex. B to Federal MTD, Doc. No. 11-2.  Plaintiff argues that this is extrinsic evidence, but on a motion to dismiss for lack of subject matter jurisdiction, the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039 (internal quotation marks and citation omitted).

Section A.2., the FTCA subjects the United States to suit only if it would be liable as a private person. "A [state] constitutional tort claim such as [Plaintiff's] could not contain such an allegation." *Meyer*, 510 U.S. at 477-78. Accordingly, the claim for violations of the California Constitution in the Fourth Cause of Action is dismissed for lack of jurisdiction as to the United States, the DEA and Federal Officers in their official capacities.

### B. Failure to State a Claim

Having disposed of the preliminary jurisdictional issues, the Court now turns to the adequacy of Plaintiff's remaining claims against the Federal Defendants. Federal Defendants argue the following should be dismissed for failure to state a claim: (1) Section 1983 and *Bivens* claims against Federal Officers in their individual capacities; (2) claim for violation of the California Constitution against Federal Officers in their official capacities; and (3) the state tort claims.

### 1. First and Third Causes of Action, Section 1983 and *Bivens*

Federal Officers argue Plaintiff's claims under Section 1983 and *Bivens* based upon a violation of the Fifth Amendment's Takings Clause fails to assert a cognizable legal theory. They further argue Plaintiff fails to allege sufficient facts to state Section 1983 and *Bivens* claims based upon a violation of the Fourth Amendment and the due process clause of the Fifth Amendment. [10] Additionally, they contend they are entitled to qualified immunity.

The Court explained in detail above why County Officers are not entitled to qualified immunity against Plaintiff's Section 1983. *See supra*, Subsction I.B. For the same reasons, Federal Officers are not entitled to qualified immunity as to the Section 1983 and *Bivens*

---

[10] Federal Officers argue, by footnote, that they were acting as agents of DEA and not "under color of state law." Federal MTD at 8 n.6. Plaintiff counters that there was a "sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself." *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008). Federal Officers did not address this argument in their reply.

claims based upon a violation of the Fourth Amendment. [11]   However, as mentioned above in Section I.B., Plaintiff fails to allege facts demonstrating the hemp plants were taken for a public use as required to support a violation of the Takings Clause of the Fifth Amendment and, as alleged, Plaintiff's due process allegations are duplicative of the Fourth Amendment claim.  Accordingly, Plaintiff fails to state a claim for violation of its rights afforded under the due process and the Takings clauses of the Fifth Amendment.

### 2.  California Constitution

For the reason discussed above in Section I.F., the Fourth Cause of Action is dismissed.

### 3.  State Tort Claims

The United States invokes the FTCA's "detention of goods" exception in arguing the claims for conversion, trespass to chattels and negligence claims must be dismissed against the Federal Defendants in their entirety because the United States is the only proper defendant under the FTCA which is the exclusive remedy for tortious conduct of federal employees within the scope of their duties.  That exception provides that the United States is not subject to suit for "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by . . . any other law enforcement officer."  28 U.S.C. § 2680(c).   The Supreme Court has interpreted this exception "broadly" to "maintain sovereign immunity for the *entire universe of claims* against law enforcement officers . . . 'arising in respect of' the 'detention' of property."  *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008) (emphasis in original) (quoting *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008)).  The exception, however, has its own exception: "re-waiver" of sovereign immunity occurs if, among other things, "the property was seized for the purpose of

---

[11] "The qualified immunity analysis is identical under either" *Bivens* or Section 1983.  *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *accord Blevins v. Iwuagwu*, No. 18-cv-3429, 2019 WL 4738320, at *1 (N.D. Cal. Sept. 26, 2019).

forfeiture." 28 U.S.C. § 2680(c)(1); *Foster*, 522 F.3d at 1075; *accord DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1125 (9th Cir. 2019).

Here, Plaintiff argues that re-waiver exception applies because the search warrant and accompanying affidavit mention the possibility of federal forfeiture. *See* Ex. A to Federal MTD at 4. Plaintiff contends that this fact establishes that its hemp plants were seized "for the purpose of forfeiture." Not so. The Ninth Circuit has plainly stated that "the re-waiver of sovereign immunity . . . applies only to property seized *solely* for the purpose of forfeiture." *Foster v. United States*, 522 F.3d at 1075 (emphasis added). "Consequently, the fact that the government may have had the possibility of a forfeiture in mind when it seized Plaintiff's property does not detract from the application of the detention of goods exception when criminal investigation was a legitimate purpose of the initial seizure." *Id.* Here, even assuming the Federal Officers had forfeiture in mind, the well-pled facts show that their search also had the "dual purpose" of a criminal investigation for illegal cultivation of marijuana. *Id.*; AC ¶ 42. Thus, Plaintiff's common-law tort claims (Fifth, Sixth and Seventh Causes of Action) against all federal defendants is dismissed.

**III. Leave to Amend**

Plaintiff seeks leave to amend to cure any deficiencies noted by the Court. To the extent the dismissed claims may be cured by additional allegations, Plaintiff is granted leave to amend. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1.    County Defendants' motion to dismiss (Doc. No. 9) is **GRANTED IN PART AND DENIED IN PART**.

2.    Federal Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

3.    The following claims are **DISMISSED**:

a.  First Cause of Action (Section 1983) against the United States, DEA and Federal Officers in their official capacities;

b.  Second Cause of Action (violation of the Bane Act) against the United States, DEA, and Federal Officers;

c.  Third Cause of Action (violation of U.S. Constitution) against County Defendants, United States, the DEA and Federal Officers in their official capacities;

e.  Fourth Cause of Action (violation of the California Constitution) in its entirety;

f.  Fifth Cause of Action (conversion) against the United States, DEA and Federal Officers;

g.  Sixth Cause of Action (trespass to chattels) against the United States, DEA and Federal Officers;

g.  Seventh Cause of Action (negligence) against the United States, DEA and Federal Officers.

4. The following claims remain:

a.  First Cause of Action (*Monell*) against the County for failure to train;

b.  First Cause of Action (Section 1983) against County Officers in their individual capacities and Federal Officers in their individual capacities based on violation of the Fourth Amendment;

c.  Second Cause of Action (violation of the Bane Act), against County Defendants premised on the Fourth Amendment and Article I Section 13 of the California Constitution;

d.  Third Cause of Action (U.S. Constitution) against Federal Officers in their individual capacities based on violation of the Fourth Amendment;

e.  Fifth Cause of Action (conversion), Sixth Cause of Action (trespass to chattels), and Seventh Cause of Action (negligence) against County Defendants.

5.  If Plaintiff wishes to amend, it may file an amended complaint **on or before October 10, 2023.**

**IT IS SO ORDERED.**

DATED:  September 19, 2023

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE